Gholson, J.
The decision of this case turns on the question, whether the covenant in the deed from Tanquay to the railroad company, affects the assignees of Tanquay, and the plaintiff holding,under them, the possession of the field through which the right of way was granted. The covenant was that Tanquay, his heirs and assigns, should build and keep up a fence on each side of the right of way; and a right was reserved to Tanquay, his heirs and assigns, to pass and repass over the same, so as not to interfere with the running of trains. The intention is clear, that the covenant should run with the land, and bind heirs and'assigns; and assigns being expressly named, we have not the difficulty, which was the subject of discussion in Masury v. Southworth, 9 Ohio St. Rep. 340. Our inquiry is, whether the law permits such a covenant to run with the land, and bind the assignee of the covenantor?
There is no objection to the character of the thing to which the covenant relates. “ A covenant in which .the assignee is specifically named, though it were for a thing not in esse at the time, .yet being specifically named it would bind him, if it affected the nature, quality or value of the thing demised, independently of collateral circumstances; or if it affected the mode of enjoying it.” Mayor of Congleton v. Pattison, 10 East, 135; Easterly v. Sampson, 6 Bing. 644, 652; Jourdain v. Wilson, 4 B. & Ald. 266; Sharp v. Waterhouse, 7 Ell. & Black. 816, 823. The construction and maintenance of a fence on each side of the strip of land over which the right of way to be exercised, manifestly affected the mode of enjoying it, and it may be properly added, beneficially to both parties. The difficulty in the case arises from considerations as to the relation of the parties, and the character of the right in the land acquired by the railroad company.
As to the relation of the parties, does there exist between the assignee of the land and the railroad company, a privity of estate, analogous to that between the assignee of a lessor, *52 and the lessee? There is a highly respectable authority that such' a relation exists. It is said, in the case of Morse v. Aldrich, 19 Pick. 449, 453: “To create a covenant which will run with the land, it is necessary that there should be a privity of estate between covenantor and covenantee. Spencer’s-■case, 5 Co. 16; Cole’s case, Salk. 196; 3 Wils. 29; Webb v. Russell, 3 T. R. 402; Keppell v. Bailey, 2 Mylne & Keen, 517; Vyvyan v. Arthur, 1 Barn. & Cress. 410. In these cases, and in most of the cases on the same subject, the covenants-were between lessors and lessees; but the same privity exists-between grantor and grantee, where a grant is made of any subordinate interest in land; the reversion or residue of the-estate being reserved by the grantor, all covenants in support of the grant, or in relation to the beneficial enjoyment of it, are real covenants and will bind the assignee.” In the case-of Hurd v. Gurtis, 19 Pick. 459, where the several owners of mills drawing water from the same stream by means of the same dam, entered into an indenture in which they covenanted for themselves, their heirs and assigns, that they would erect and use wheels of a certain construction and power in their respective mills, it was held there was no privity of estate, the court saying: “ Their estates were several, and there was no grant of any interest in the real estate of either party to-which the covenants could be annexed.” But in the case of Savage v. Mason, 3 Cush. 500, where there was a covenant in « deed of partition between tenants in common, in regard to the wall of buildings to be placed on the lines dividing the lots,, and providing for the use of and payment for such wall, it was held that there was privity of estate, and that the liability to perform, and right to take advantage of the covenant, passed to the heir or assignee of the land, to which. the covenant was attached. A similar view as to what constitutes privity of estate, to sustain a covenant, intended to run with the land, is taken in the case of Weyman v. Ringold, 1 Bradf. 40, 54; and also in the case of Duffy v. The N. Y. & H. R. R. Co., 2 Hilton, 496, the circumstances of which are quite analogous to those of the present case.
. In the notes to 1 Smith’s Leading Cases, 143, it is said of *53 the case of Morse v. Aldrich, “ it was decided, that where the fee to a milldam was vested in one man, and the right to use it as a fish pond in another, there was sufficient privity of estate between them, to render a covenant by the former to draw off the water once in every year, incident to the land, and binding on those in whom it subsequently vested. It may be doubted whether this decision can be sustained on the ground on which it was put by the court. To constitute privity of estate, the position of the parties must, it would seem, be such as would formerly have given rise to the relation of tenure, and if so, it can not arise from the mere grant of an easement out of an estate in fee. If, however, the ground taken in ■Savage v. Mason, be law, and the character of a covenant be dependent upon the effect of the whole agreement of which it is a part, the covenants in question in Morse v. Aldrich, and Hurd v. Curtis, may both have been for the benefit of the land, and consequently binding upon heirs and subsequent purchasers. Eor when the benefit and burden of an agreement are so inseparably connected, that each is necessary to the existence <of the other, it would seem to follow that both must go together, and that a liability to the burden will be a necessary incident to the right of the benefit.”
This leads to an inquiry into the character of the right acquired by the railroad company. And it is said in the same note, that what is in the form of a covenant may bind as a ■grant, the assignee of the land. Or, as the judges who differed from Lord Holt, in Brewster v. Kitchell, 12 Mod. 166, are reported to have thought, “might charge the land, being in the nature of a grant, or at least a declaration going along with the grant, showing in what manner the thing granted should be taken.” And it is said by Mr. Smith in his notes, 1 Smith’s Lead. Oas. 128, that the covenant, in the case of Holmes v. Buckley, 1 Abr. Eq. 27, it might be urged, “ was in fact part of the grant.” That covenant was held to run with the land and to bind assignees, and is thus stated in the work cited: “ A. .and R., his wife, being seized in right of R., of two pieces of ground, granted by indenture a watercourse to J. H., and his heirs, through the said two pieces of ground, and covenanted fol *54 them, their heirs and assigns, to cleanse the' same.” It may here be remarked, that if it could be properly urged that such a covenant was a part of the grant, it might with more force be claimed, that the railroad company obtained the grant of a fenced right of way.
There is another class of cases, which it is proper to notice. In the case of Barrow v. Richard, 8 Paige, 351, the owner of a block of ground, divided it into lots, and sold to different individuals. In the conveyances there were mutual covenants between the grantor and grantees respectively, against the erection of any livery stable, slaughter-house, etc., or the carrying on any offensive manufactory or trade, and it was held that, “ although a previous purchaser from the owner of the block could not sue at law, upon the covenant in the deed to a subsequent purchaser, the court of-chancery might protect him by injunction against the carrying on of any noxious business, or trade, upon the lot of such subsequent purchaser.” The case of Whatman v. Gilson, 9 Sim. 196, was in circumstances analogous, and the objection was taken that, “there is no reversion existing, nor any privity of estate between them. The object of the covenant is to restrain forever an absolute, owner of land, from using it in a particular manner.” The answer of the court was: “It is quite clear that all the parties who executed this deed, were bound by it; and the only question is, whether, there being an agreement, all persons who come in as devisees or assignees under those parties, who took .with notice of the deed, are bound by it. I see no reason why such an agreement should not be binding in equity on the parties-so coming in with notice.” The same principle has been admitted in other cases. Schreiber v. Creed, 9 Sim. 9; Bristow v. Wood, 1 Collyer, 480; Mann v. Stephens, 15 Sim. 377 ; Hills v. Miller, 3 Paige, 254.
It may be said, that in a court of law, notice does not affect the question, 1 Smith’s Lead. Cas. 132, but under our code of civil procedure, this distinction as to the forum has not the same effect. As to notice, under our system of conveyance, provision is made for constructive notice of any deed by which land is conveyed, “ or otherwise affected or incumbered in law.” *55 And in such a case as the present, the party holding the land, over which the right of way is being exercised, is immediately led to the inquiry, as to the character and extent of the claim, and, independent of the record of the deed, would be regarded as having notice. He has, moreover, the right reserved for his benefit, to pass and repass over the strip of land granted for the right of way, and must know that such his right is to be exercised, not over an unfenced strip, but at particular points, where the proper arrangements are made.
We have not in this case to decide, whether the railroad company could maintain an action against an assignee of Tan-quay for neglecting to erect and maintain the fence. 'We are limited to the inquiry, whether he is so far affected by the covenant in the grant, that he can derive no advantage from its breach, or claim from the railroad company a higher degree of care to avoid injury to his cattle, being on the track through the field, than if the covenant had been kept. And, we think, we are warranted by the authorities in deciding that he is bound to that extent, and we feel confident that in so carrying into effect the manifest intention of the parties to the grant, we are sustained by reason and sound policy, and infringe upon no just right of an assignee. The plaintiff stands in the position of an assignee, and the court of common pleas, therefore, erred in saying to the jury that he was not affected by the covenant, and its judgment was correctly reversed by the district court.
Judgment affirmed.
Peck, C.J., and Brinkerhoee, Scott and Ranney, J.J., concurred.